IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GEORGE B. WILLIAMS, )
 )
       Petitioner, )
 )
       v. ) 1:13CV89
 )
RICHARD B. NEELY, )
 )
       Respondent. )

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner George B. Williams, a prisoner of the State of North Carolina, has brought a Petition [Doc. #2] seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On August 12, 2010, in the Superior Court of Forsyth County, a jury convicted Petitioner of felony breaking and entering and felony larceny after breaking and entering. (Petition at 1-2.) Sentenced as a habitual felon, he received a sentence of 136-173 months of imprisonment in cases 09 CRS 3309 and 09 CRS 52017. (Id. at 2.) Petitioner pursued a direct appeal, but it proved unsuccessful after the North Carolina Court of Appeals found no error and the North Carolina Supreme Court denied discretionary review. State v. Williams, No. COA10-1482, 2011 WL 3276811, 214 N.C. App. 195, 714 S.E.2d 530 (Table) (Aug. 2, 2011), rev. denied, 365 N.C. 362, 718 S.E.2d 394 (2011). Petitioner filed nothing more in the state courts before filing his Petition in this Court. Respondent responded to the Petition with a Motion for Summary Judgment [Doc. #8], which is now pending before the Court.

## Facts

The facts of the case, as set out by the North Carolina Court of Appeals in denying Petitioner's direct appeal, are as follows:

> On 6 July 2009, Defendant was indicted on charges of felony breaking and/or entering, larceny after breaking and/or entering, and felony larceny for crimes committed on 14 January 2009 and 20 January 2009 against Millennium Landscaping ("Millennium") in Kernersville, North Carolina. On the same day, Defendant was indicted as having attained habitual felon status pursuant to N.C. Gen. Stat. § 14–7.1 (2009). The cases were consolidated and tried during the 9 August 2010 Criminal Session of the Forsyth County Superior Court.
>
> Prior to trial, three motions were offered, two of which are at issue in Defendant's appeal. First, the State moved to admit surveillance video recorded at Millennium as substantive evidence. Second, Defendant moved to suppress testimony by Archdale Police Captain Mickey Denny ("Captain Denny"), identifying Defendant from photographs taken from the surveillance video recorded on 14 January 2009.
>
> In consideration of these motions, the trial court conducted voir dire of several witnesses. Richard Knowles ("Knowles"), owner and general manager of Millennium, testified during voir dire that his company uses several security cameras on the Millennium premises. Knowles narrated two recordings from Millennium's security cameras that were played during his voir dire testimony.
>
> In the 14 January 2009 videotape, Knowles described a pickup truck parked on the ramp to the storage buildings at Millennium. Knowles then described that an individual cut the locks off the storage buildings, and removed several pieces of landscaping equipment from inside. Knowles explained that the person in the video removed a lock from Millennium's office, noticed the surveillance camera, and walked away. It appeared that the same individual returned and broke the camera off the tree to which it was affixed.
>
> The second video captured a second break-in at Millennium on 20 January 2009. Knowles described the video as showing that two individuals exited a pickup truck with a gas can and a hose. The two individuals siphoned gas from another vehicle on the premises and took a ladder, two tires, and an air tank. Knowles also testified that he printed still photographs from the surveillance videos and provided them to the Forsyth County Sheriff's Department with copies of the videos. The trial court noted that none of the photographs depicted the individual

completely. Defendant did not cross-examine Knowles. The trial court granted the State's motion to admit the videotape as substantive evidence.

The State then called Captain Denny for voir dire testimony. Captain Denny testified that he viewed the still photographs provided by Knowles at a monthly law enforcement meeting where such photographs and information were routinely shared between law enforcement officials. Captain Denny testified that he recognized the individual in the photographs provided by Knowles and compared Knowles' photographs with a photo of Defendant within his office's in-house computer system. Captain Denny also testified during voir dire that he recognized Defendant from charging Defendant with crimes on two or three occasions and from photographs in sheriffs' department wanted flyers. Defendant moved to suppress Captain Denny's testimony on the grounds that: (1) Captain Denny's testimony would be treated as expert testimony by the jury because of Captain Denny's status as a police officer; and (2) Captain Denny's testimony that he knew Defendant would imply that Defendant had a criminal history.

Defendant also cited State v. Belk, 201 N.C. App.412, ——, 689 S.E.2d 439, 441–42 (2009), writ denied, review denied, 364 N .C. 129, 695 S.E.2d 761 (2010), in which this Court discussed the factors a trial court should consider when deciding whether to admit lay opinion testimony identifying a person in a photograph or videotape. Defendant's counsel argued that Captain Denny's prior contact with Defendant was not sufficient to "put [ ] him in a better position to identify the individual in the video than the jury."

The trial court denied Defendant's motion in limine to the extent that Captain Denny could testify in order to identify Defendant as the individual in the surveillance video, but granted the motion to the extent that Captain Denny could not testify that he had knowledge of Defendant from prior arrests. The trial court then proceeded with Defendant's trial.

During the trial, the State called Captain Denny to testify. Prior to Captain Denny taking the stand, Defendant renewed his Motion to Suppress Captain Denny's testimony. The trial court denied the Motion. Captain Denny identified the still photographs admitted into evidence as being the same photographs distributed at the area law enforcement meeting he attended. Captain Denny also admitted that he had only seen Defendant in photographs, and had never seen Defendant in person, contrary to his voir dire testimony.

Upon learning Captain Denny had not previously arrested or charged Defendant, the trial court excused the jury and acknowledged a "misunderstanding" of the facts in ruling on Defendant's motion in limine. The trial court struck all

3

references in the record that stated Captain Denny previously arrested or charged Defendant. However, this did not change the ruling on Defendant's Motion; the trial court reasoned Captain Denny's immediate recognition of Defendant based upon seeing Defendant's photograph in several other settings was sufficient to allow him to testify.

The State also called Detective Todd Blakely of the Randolph County Sheriff's Office ("Detective Blakely") to testify. Detective Blakely testified that he knew Defendant, that he had seen Defendant in contexts other than photographs, and that he had seen Defendant at Defendant's residence. Detective Blakely testified that he took photographs of Defendant's Ford F–150 pickup truck during a visit to Defendant's residence, which were admitted into evidence without objection.

Williams, 2011 WL 3276811, at *1-3. Additionally,

> during jury deliberations, the jury requested "to have the defendant stand up before us for a better identity." The trial court accommodated the request, allowed the jury to return to the courtroom, and asked Defendant to walk to the jury box and stand before the jury. After approximately eight or nine seconds, a couple of jurors asked Defendant to turn sideways. Defendant did so, and remained standing for approximately five more seconds before returning to his seat. After resuming deliberations, the jury requested the photographs from the surveillance video be sent to the jury room, which the trial court did. The jury then returned a unanimous verdict finding Defendant guilty of both charges.

Id., at *4.

### Claims

Petitioner raises three overlapping claims for relief in his Petition. The first is that the state trial court violated his due process rights when it allowed Detective Denny to testify that he identified Petitioner in the surveillance photographs even though he had never seen him in person. (Petition at 6.) Petitioner's second claim is a statement that he suffered prejudice due to the violation of his "rights arising other than under the Constitution." (Id. at 8.) It is not entirely clear, but Petitioner appears to raise a non-Constitutional claim based on the same facts as his first claim for relief. Finally, Petitioner alleges in his third claim that the State violated his

4

federal rights to the point that a "'fundamental defect with inherently results in a complete miscarriage of justice' or is inconsistent with rudimentary demand of fair procedure" occurred. (Id. at 10.) This also appears to be a repetition or reiteration of his first claim for relief.

Discussion

Respondent's primary argument as to all of Petitioner's claims is that they are non-exhausted and procedurally barred. As set out above, Petitioner's first claim is that his federal due process rights were violated through Denny's identification testimony. However, during his appeal, Petitioner challenged the identification under state, not federal, law. (Respondent's Supporting Brief [Doc. #10], Ex. 4 at 13-14 and Ex. 7 at 13-14.) The same is true for his second and third claims for relief, which are really just restatements or permutations of his first claim. All of the claims challenge Captain Denny's testimony and/or the admission of the associated photographs, and Petitioner's appeal did not raise any challenge to Denny's testimony or the photographs based on federal law. Therefore, Petitioner failed to raise and exhaust any federal constitutional claim in the state courts.[1] See Baldwin v. Reese, 541 U.S. 27, 29 (2004) (holding that petitioner must fully and fairly present all his federal claims to each level of review in the state system); Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (finding that petitioner must place "both the operative facts and the controlling legal principles" before the state courts); Hiivala v. Wood, 195 F.3d 1098, 1106-07 (9th Cir. 1999) (recognizing that "general appeals to

---

[1] It is not entirely clear from the Petition that Petitioner is raising a federal due process claim or other federal claims even in this Court, but he does appear to treat them as federal claims in his Response. (See Response [Doc. #13] at 6.) Further, he must necessarily be raising such claims because errors of state law are not cognizable on federal habeas review. Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998). Therefore, the Court will treat Petitioner's claims as arising under federal law.

broad constitutional principles[] such as due process" and the "mere similarity between a claim of state and federal error" does not suffice); Adelson v. DiPaola, 131 F.3d 259, 262-64 (1st Cir. 1997) (concluding that "mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim"). Because of the failure to exhaust, this Court cannot grant relief to Petitioner. See 28 U.S.C. § 2254(b)(1) (stating that the habeas corpus cannot be granted unless the petitioner "has exhausted the remedies available in the courts of the State").

The Court could stay or dismiss the case without prejudice to allow Petitioner to exhaust his state court remedies. However, there is no need to do so because his claims are procedurally barred. If Petitioner returned to the state courts to exhaust his claim by filing a motion for appropriate relief, he would find his claim procedurally barred by N.C. Gen. Stat. § 15A-1419 because he could have pursued the claim on direct appeal, but did not. This means that the claims are also procedurally barred from consideration in this Court. See O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999).

In his Response, Petitioner seeks to excuse this default by faulting his appellate counsel for failing to raise his claims under federal law on direct appeal. He appears to contend that this amounted to ineffective assistance of counsel on appeal. The Court may hear Petitioner's procedurally defaulted claims if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Constitutionally ineffective assistance of counsel amounts to cause to excuse a

6

procedurally defaulted claim. See Coleman, 501 U.S. at 753-54; Murray v. Carrier, 477 U.S. 478, 488 (1986). Therefore, the Court will consider whether or not the failure to raise Petitioner's claims on direct appeal in federal constitutional terms amounted to ineffective assistance of counsel.

In order to prove ineffective assistance of counsel generally, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). With respect to the first prong, a petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). With respect to the second prong, to establish prejudice, Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. Claims of ineffective assistance on appeal are also judged using the Strickland test. See Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008). Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745 (1983); see also Smith v. Murray, 477 U.S. 527 (1986); Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Winnowing out weaker arguments to press forward with more important points is part of effective appellate advocacy. Jones, 463 U.S. at 751-52. Prejudice can be shown by demonstrating that "'counsel omitted significant and obvious issues while pursuing issues that

were clearly and significantly weaker.'" Bell v. Jarvis, 236 F.3d 149, 180 (4th Cir. 2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).

As an attachment to his Response, Petitioner submits a letter from his appellate attorney written, according to Petitioner, in response to Petitioner asking him to raise a "due process" claim (presumably a federal due process claim) on direct appeal. The letter acknowledges that Petitioner wrote asking the attorney to raise a due process claim. However, as set out in the letter, counsel did not raise it because there was "really only one argument that [had] any chance of getting [Petitioner] relief, in [his] opinion, and that argument" was based on state law. (Response [Doc. #13], Ex. 1.) The attorney was "concerned that raising additional arguments [would] work to dilute the one good argument." (Id.) Further, he added that:

> In my experience, when an appellant raises arguments of due process or argues that the court abused its discretion under Rules 403 and 404, the clerks and judges at the Court of Appeals are more inclined to assume that no meritorious arguments exist and are more likely to rule against the appellant. I know this from having personally worked at the Court of Appeals as a judicial clerk. The more you throw at the court the less likely they are to listen to your argument. And, when you invoke arguments that almost never prevail, they are conditioned to assume that there is no "real" issue and that the conviction should be affirmed.

(Id.) He added that Petitioner could perhaps later bring collateral challenges in state or federal court based on ineffective assistance and that he might then be able to raise his due process claim. However, counsel did not raise the requested arguments in the state appeal because "it would be futile and possibly counterproductive to raise those arguments at this stage." (Id.)

The letter proffered by Petitioner clearly indicates that Petitioner's appellate attorney considered the due process claim, but winnowed it out after making the strategic decision that it was the weaker argument. As set out in the letter, based on his experience with the state

8

courts, he determined that the state law version of the claim had a greater chance of success and that its viability would be lessened by raising the claim sought by Petitioner. The Court must give strong deference to this type of strategic decision. Meyer v. Branker, 506 F.3d 358, 371 (4th Cir. 2007). Counsel's reasoned decision did not fall below a reasonable standard for defense attorneys in this instance. Further, although counsel did not raise the claim in federal terms, he did raise the substance of the claim by challenging Denny's identification of Petitioner under state law. The North Carolina Court of Appeals rejected the claim stating:

> Given the jury's request to view Defendant in person and subsequent review of the photographs from the surveillance video, we cannot conclude that they relied solely on Captain Denny's testimony in reaching their verdict. Nor can we conclude that absent Captain Denny's testimony it is probable the jury would have reached a different conclusion.

Williams, 2011 WL 3276811, at *4. Given the basis for the decision, there is absolutely no sign that the outcome would have been different had counsel raised the claim under federal law as well as state law. Petitioner points to nothing to demonstrate that the North Carolina Court of Appeals would have treated a federal law claim any differently. Therefore, counsel's decision to raise the issue under only state law, as opposed to state and federal law, did not prejudice Petitioner on direct appeal. Petitioner cannot establish either prong of the Strickland test. Therefore, he cannot surmount the procedural bar and this Court cannot consider his claims. Respondent's Motion for Summary Judgment should be granted.

IT IS THEREFORE RECOMMENDED that Respondent's Motion for Summary Judgment [Doc. #8] be granted, that the Petition [Doc. #2] be denied, and that this action be dismissed.

This, the 26th day of February, 2014.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge